# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37812

ISABEL ENRIQUEZ,

    Plaintiff-Appellant,

v.

IDAHO POWER COMPANY,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, November 2011 Term

2012 Opinion No. 39

Filed: March 2, 2012

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

The district court's grant of a directed verdict is <u>affirmed</u>.

Kent D. Jensen Law Office, Burley, for appellant. Kent D. Jensen argued.

Brassey, Wetherell & Crawford, Boise, for respondent. J. Nick Crawford argued.

_____

HORTON, Justice

This appeal arises from a negligence action brought by Isabel Enriquez (Enriquez) against Idaho Power Company (Idaho Power). Enriquez received severe electrical burns when he encountered an aluminum sprinkler pipe that had become energized by a high-voltage power line. He claimed that after the power line broke and electrified the pipe, Idaho Power's safety equipment did not shut off the current to the downed line, allowing him to be shocked when he approached the pipe to move it.

The case went to trial, and Enriquez argued that Idaho Power was negligent under the doctrine of res ipsa loquitur. At the close of Enriquez's case in chief, Idaho Power moved for a directed verdict. The district court determined that res ipsa loquitur did not apply to the facts of this case and granted the motion. On appeal, Enriquez argues that the district court erred in holding that res ipsa loquitur did not apply and the directed verdict was therefore improper. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Enriquez received an electrical shock when he approached an aluminum sprinkler pipe that had become charged by a downed power line. He was preparing a field for harvest when he saw the sprinkler pipe on the ground in front of the tractor he was driving. The pipe was partially covered by vegetation and was located directly under high-voltage power lines that powered the field's irrigation system. Enriquez testified that when he approached the pipe to move it out of the way of the tractor, he was shocked and lost consciousness. He stated that he did not lift the pipe up into the line and that he intended to drag the pipe to the side.

Upon regaining consciousness, Enriquez returned to the tractor and used the radio to inform his supervisor of the accident. He testified that he noticed the broken power line only after he regained consciousness and was back in the tractor. When the supervisor arrived, Enriquez warned him not to approach the tractor. The supervisor saw the downed line, and both men waited for Idaho Power employees to secure and repair the broken power line.

Enriquez sued Idaho Power for his injuries, alleging negligence, and requested a jury instruction on res ipsa loquitur. Idaho Power objected to the proposed jury instruction, arguing that Enriquez could not meet the elements required for its application. After the close of Enriquez's case, Idaho Power moved for a directed verdict, contending that res ipsa loquitur was inapplicable and, absent application of the doctrine, Enriquez had failed to prove negligence by Idaho Power. The district court heard argument and found that res ipsa loquitur did not apply and Enriquez had failed to prove that Idaho Power was negligent. Judgment was entered against Enriquez, and he timely appealed. Enriquez asks this Court to reverse the district court's grant of directed verdict and remand for a new trial.

# II. STANDARD OF REVIEW

When reviewing a decision to grant or deny a motion for a directed verdict, this Court applies the same standard the trial court applied when originally ruling on the motion. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 315, 233 P.3d 1221, 1237 (2010) (citation omitted). This Court exercises free review and does not defer to the findings of the trial court. *Todd v. Sullivan Constr. LLC,* 146 Idaho 118, 124, 191 P.3d 196, 202 (2008). In conducting this review, "we determine whether there was sufficient evidence to justify submitting the claim to the jury, viewing as true all adverse evidence and drawing every legitimate inference in favor of the party opposing the motion for a directed verdict." *Id.* This test "does not require the evidence

be uncontradicted," but only that it "be of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion is made is proper." *Waterman v. Nationwide Mut. Ins. Co.,* 146 Idaho 667, 672, 201 P.3d 640, 645 (2009). "[W]here a non-moving party produces sufficient evidence from which reasonable minds could find in its favor, a motion for directed verdict should be denied." *Lawton v. City of Pocatello,* 126 Idaho 454, 458, 886 P.2d 330, 334 (1994) (citation omitted). This Court exercises free review over questions of law. *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009).

## III. ANALYSIS

### A. Res ipsa loquitur does not apply in this case.

Before discussing application of the doctrine of res ipsa loquitur, it is important to identify the theory of negligence Enriquez advanced to the trial court when it considered Idaho Power's motion for directed verdict. We do so because, on appeal, Enriquez appears to assert that Idaho Power was negligent in two respects: (1) by permitting the power line to fall; and (2) by failing to have adequate safety measures in place to prevent injuries from the fallen power line. However, it is clear that the first theory expressed on this appeal was not advanced at trial. Indeed, Enriquez's expert, Lars Kamm (Kamm), assumed that outside forces were responsible for the line's failure, testifying on direct examination: "Remember we have a loose wire hanging down which has just been broken by some mechanical effect up in the air, quite possibly by winds shaking it back and forth like the winds around here, and the broken end fell down…." On cross-examination, Kamm reiterated his belief that the line may have broken due to weather.

Kamm did not advance an opinion regarding Idaho Power's alleged negligence.[1] Rather, his testimony was directed to the issue of how Enriquez came to be injured. This testimony apparently anticipated that Idaho Power's theory would be that Enriquez was shocked by lifting the irrigation pipe in such a fashion as to contact the wire overhead, rather than being injured in the manner which he described.

Kamm testified that if Enriquez had been holding the pipe when it came into contact with the energized power line, the high voltage carried by the line would have certainly killed him.

---

[1] This is likely because Kamm acknowledged that he had no opinion as to the cause of the line breakage, that he was not an expert on the subjects of installing, repairing, or maintaining power lines and was unfamiliar with the amount of current required to trip the circuit breaker on this line.

Kamm testified as to the amount of current that human beings can survive, making reference to the amount of current that would trigger a ground fault circuit interrupter (GFCI) installed in a home. Kamm explained that since Enriquez survived, a mechanism of injury other than the pipe contacting the energized line must have been involved. Kamm opined that the power line fell into a network of plants around the pipe, creating a high impedance fault.[2] Kamm summarized this opinion, stating: "In this case, to essentially cut to the chase, Mr. Enriquez caught a bad shock because a high-impedance fault did not cause Idaho Power to turn off the power which generated the fault." Kamm opined that at some point after Enriquez was shocked, the power line came into direct contact with the pipe, triggering a form of circuit breaker referred to as a recloser, thus de-energizing the line.

In response to Idaho Power's motion for directed verdict, Enriquez's attorney advanced only the second theory of negligence identified in this appeal. He took the position that Idaho Power's safety equipment did not respond to the high-impedance fault resulting from the downed power line, permitting it to remain energized and shock Enriquez, stating: "[O]ur theory is the line was broken, it created a high-impedance-fault situation which did not trip the breakers for Idaho Power."

As this Court has long held that it will not consider issues raised for the first time on appeal and Enriquez did not advance a theory of negligence based upon line failure before the district court, we will address only the second theory of negligence. *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 752, 101 P.3d 690, 696 (2004) (citing *Row v. State,* 135 Idaho 573, 580, 21 P.3d 895, 902 (2001)).

The doctrine of res ipsa loquitur is a method of establishing negligence by means of "inferences, rather than direct proof." *Christensen v. Potratz,* 100 Idaho 352, 355, 597 P.2d 595, 598 (1979). When applicable, it "creates an inference of the breach of the duty imposed and replaces direct evidence with a permissive inference of negligence." *Id.* (citations omitted). Two elements must exist before res ipsa loquitur applies in a particular case: (1) "the agency or instrumentality causing the injury must be under the exclusive control and management of the defendant," and (2) "the circumstances must be such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of

---

[2] A high impedance fault is a short circuit that occurs when a conductor, such as the high-voltage wire in this case, makes electrical contact with an object of high electrical resistance.

negligence." *Id.* (citations omitted). Application of the doctrine is "limited to those cases which are within the common knowledge and experience of the average layperson." *Kolln v. St. Luke's Reg'l Med. Ctr.*, 130 Idaho 323, 334, 940 P.2d 1142, 1153 (1997).

In addition to these two requirements, this Court has held that "[i]t is also necessary that the cause of the injury point[s] to the defendant's negligence." *S. H. Kress & Co. v. Godman*, 95 Idaho 614, 617, 515 P.2d 561, 564 (1973) (citations omitted). In other words, "[t]he mere happening of an accident does not dispense with the requirement that the injured party must make some showing that the defendant against whom relief is sought was in some manner negligent, where there are other probable causes of the injury." *Christensen*, 100 Idaho at 355, 597 P.2d at 598. Therefore, to proceed under res ipsa loquitur, a plaintiff must demonstrate that the instrumentality which caused his injury was under the exclusive control and management of the defendant and that the circumstances would permit an average layperson to infer, based upon common knowledge and experience, that the plaintiff would not have suffered those injuries in the absence of the defendant's negligence.

As it is unnecessary to our decision in this case, we do not decide whether Enriquez presented sufficient evidence to permit the inference that safety equipment governing the power line was under Idaho Power's exclusive control and management. Rather, we direct our attention to the second prerequisite, i.e., whether the circumstances would permit an average layperson to infer, based upon common knowledge and experience, that Enriquez would not have been injured in the absence of Idaho Power's negligence.

In opposition to Idaho Power's motion for directed verdict, Enriquez's attorney argued that Kamm's testimony supported the inference "that the line went down and the recloser did not function as it was supposed to and the electricity was still dispersed, creating a dangerous situation which Mr. Enriquez encountered." After hearing extensive argument, reviewing case law relied upon by the parties, and reviewing a transcript of Kamm's testimony, the district court informed the parties that he did not view res ipsa loquitur as applicable to this case, stating "[t]his is a circumstance not really within the common knowledge and experience of anybody without detailed knowledge. …That is not an area of common knowledge and experience that would justify the inference that the accident would not have happened in the absence of negligence."

Enriquez's attorney responded to the ruling with additional argument, noting Kamm's testimony regarding GFCI installations in homes and arguing that the jury should be permitted to infer that similar safety devices should have been installed on a high voltage power line. After considering this argument, the court reiterated its ruling regarding res ipsa loquitur, stating "there's some general duty to provide safety mechanisms, but what those are are not within the common experience of the jury or this court."

In this appeal, Enriquez relies upon two out-of-state cases in support of his assertion that this is not the type of accident that happens without negligence. Enriquez suggests that the factual situations in the out-of-state cases are similar to the facts in his case, and that the reasoning these courts used is therefore applicable. However, both of these cases are distinguishable from his appeal because those states apply a different standard for drawing the inference of negligence. First, in a case from Washington, the appellate court affirmed the application of res ipsa loquitur in a wrongful death case. *Faust v. Benton Cnty. Pub. Util. Dist. No. 1*, 535 P.2d 854 (Wash. Ct. App. 1975). In *Faust*, the court recited the first requirement for applying res ipsa loquitur in Washington as "(1) the accident or occurrence producing the injury is of a kind that ordinarily does not happen in the absence of someone's negligence." *Id.* at 856.[3] The court then considered the circumstances of the appeal before it and found that it was "apparent that the type of injury here does not ordinarily occur in the absence of someone's negligence." *Id.*

In the other case, a Nebraska trial court declined to apply res ipsa loquitur in a negligence action where a broken power line burned a corn field. *Koch v. Norris Pub. Power Dist.*, 632 N.W.2d 391 (Neb. Ct. App. 2001). The appellate court reversed, based partly on its statement of the first Nebraska requirement for the application of res ipsa loquitur, which is that the accident "is one which would not, in the ordinary course of things, happen in the absence of negligence."[4]

---

[3] In Washington, the following three factors must be present for the doctrine to apply: "(1) the accident or occurrence producing the injury is of a kind that ordinarily does not happen in the absence of someone's negligence; (2) the injury is caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the injury-causing accident or occurrence is not due to voluntary action or contribution on the part of the plaintiff." *Faust*, 535 P.2d at 856.

[4] In Nebraska, in order for the doctrine to apply, the following requirements must be satisfied: "(1) The occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence; (2) the instrumentality that produced the occurrence was under the exclusive control and management of the defendant; and (3) there is an absence of an explanation by the alleged wrongdoer." *Koch*, 632 N.W.2d at 397 (citing *Roberts v. Weber & Sons, Co.*, 533 N.W.2d 664 (Neb. 1995)).

*Id.* at 397. The court stated that "[i]t seems clear that powerlines should be built and maintained so they do not fall without the intervention of nature or a person and that therefore if a line falls without explanation, it must have been negligently constructed or maintained." *Id.* at 400.

Apart from the fact that neither case addresses the specific theory of negligence advanced before the trial court, these cases are inapposite because they apply different legal standards. Idaho's version of the requirement that the accident must be the kind that does not normally occur without negligence is different from the requirement in either Washington or Nebraska. In this state, the rule is that "the circumstances must be such that *common knowledge and experience would justify the inference* that the accident would not have happened in the absence of negligence." *Christensen*, 100 Idaho at 355, 597 P.2d at 598 (emphasis added). Consequently, this Court has held that the applicability of res ipsa loquitur is "limited to those cases which are within the common knowledge and experience of the average layperson." *Kolln*, 130 Idaho at 334, 940 P.2d at 1153. Further, even if the evidence might support an inference of negligence, it is still insufficient to permit the application of res ipsa loquitur unless the inference points, not just to negligence by some party, but to negligence by the defendant. *Kress*, 95 Idaho at 617, 515 P.2d at 564. In the cases cited by Enriquez, neither court was constrained by these requirements.

Taking Enriquez's evidence as true and drawing all reasonable inferences in his favor, we find that Enriquez failed to demonstrate that application of the average layperson's knowledge and experience would justify an inference that Idaho Power was negligent. To the contrary, the evidence he adduced demonstrates that the circumstances in this case would require the trier of fact to possess and apply specific technical information, which is outside of common knowledge and experience, in order to justify an inference that the accident would not have happened in the absence of negligence by Idaho Power.

Kamm testified that the mechanism of Enriquez's injuries presented a difficult and complex engineering problem. He testified that the case was "a fascinating engineering problem" and that he "spent very great attention" trying to understand how Enriquez was shocked, before arriving at the conclusion that the mechanism was a high impedance fault. Kamm acknowledged that the recloser did eventually cut power to the line, demonstrating that some amount of current would cause the recloser to function, but Kamm did not know or could not remember how much current was required to trip the recloser.

We are not persuaded by Enriquez's efforts to analogize the installation of GFCI in homes to the type of safety equipment that reasonably ought to be installed in the operation of high voltage transmission lines. Whether operators of high voltage lines should install functioning safety devices to deal with the danger imposed by high impedance faults and when such devices should operate are subjects that are manifestly not within the realm of "common knowledge of the average layperson." We therefore conclude that the district court properly refused to apply the doctrine of res ipsa loquitur.

**B. Enriquez did not argue that he presented sufficient evidence to survive a motion for directed verdict in the absence of res ipsa loquitur, and that argument is therefore waived.**

Enriquez has framed the issue in this appeal as an error in the district court's grant of Idaho Power's motion for directed verdict. As this was a negligence action, we would typically consider whether the district court erred in its determination that Enriquez had failed to prove that Idaho Power was negligent and we would decide whether Enriquez presented sufficient evidence to withstand a motion for directed verdict, considering the four elements of a common law negligence action.[5] However, Enriquez's only argument on appeal is that the directed verdict was error because he presented sufficient evidence to allow his negligence claim to go forward based upon the doctrine of res ipsa loquitur. The only Idaho authority cited is a case defining the requirements for application of res ipsa loquitur and the two cases from other states which we have previously discussed. Therefore, we will not determine whether Enriquez presented evidence regarding the elements of common law negligence sufficient to withstand the motion for directed verdict. *See, e.g.*, *Dawson v. Cheyovich Fam. Trust*, 149 Idaho 375, 382-83, 234 P.3d 699, 706-07 (2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."); *Bach v. Miller*, 148 Idaho 549, 553, 224 P.3d 1138, 1142 (2010) (citation omitted) (holding that this Court will consider issues on appeal only when "supported by argument and authority in the opening brief."); I.A.R. 35(a)(6).

---

[5] These are "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005) (citing *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991)).

## IV. CONCLUSION

Because Enriquez did not present sufficient evidence of the existence of the conditions necessary for application of the doctrine of res ipsa loquitur, we affirm the district court's grant of directed verdict. Costs to Idaho Power.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.